UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

MARTIN W. CASTLE, JR.,

                          Plaintiff,

v.                                                      1:15-CV-0197
                                                        (GTS/TWD)
THE UNITED STATES OF AMERICA,

                          Defendant.
_____

APPEARANCES:                                    OF COUNSEL:

MAINETTI, MAINETTI & O'CONNOR, P.C.            JOSEPH E. O'CONNOR, ESQ.
  Counsel for Plaintiff                        MICHAEL E. KOLB, ESQ.
130 North Front Street
Kingston, NY 12401

HON. GRANT C. JAQUITH                           CATHLEEN B. CLARK, ESQ.
Acting United States Attorney for the N.D.N.Y.  Assistant United States Attorney
  Counsel for Defendant
James T. Foley U.S. Courthouse
445 Broadway
Albany, NY 12201

GLENN T. SUDDABY, Chief United States District Judge

## DECISION and ORDER

Currently before the Court, in this negligence action pursuant to the Federal Tort Claims Act ("FTCA") filed by Martin W. Castle, Jr., ("Plaintiff") against the United States of America ("Defendant"), are the following three motions: (1) Plaintiff's motion for partial summary judgment; (2) Defendant's motion for summary judgment; and (3) Plaintiff's cross-motion requesting the exclusion of certain evidence under Fed. R. Evid. 403.  (Dkt. Nos. 51, 57, 62.) For the reasons set forth below, Plaintiff's motion for partial summary judgment is granted in part and denied in part, Defendant's motion for summary judgment is granted in part and denied in part, and Plaintiff's cross-motion is denied.

## I.    RELEVANT BACKGROUND

### A.    Plaintiff's Amended Complaint

Generally, Plaintiff's Amended Complaint asserts two distinct claims.  (Dkt. No. 40 [Am. Compl.].)  First, Plaintiff alleges that Defendant is liable for personal injuries, property damages, and other injuries and damages that he sustained in a motor vehicle accident on June 6, 2014, which involved Plaintiff's motorcycle and a postal vehicle driven by an employee of Defendant ("First Claim").  (*Id.* at 2-5.)  Second, Plaintiff alleges that Defendant is liable for personal injuries, property damage, and other injuries and damages resulting from the June 6, 2014, motor vehicle accident because Defendant's employees were negligent, careless, and acted with reckless disregard for the safety of others when devising (and failing to change) a mail route that required USPS drivers to violate New York Veh. & Traff. Law ("VTL") § 1161 and act in a manner that is hazardous to other motorists, including Plaintiff ("Second Claim").  (*Id.* at 5-7.)

### B.    Undisputed Material Facts on Plaintiff's Motion for Summary Judgment

Before reciting the material facts related to Plaintiff's motion, the Court must address Defendant's failure to fully comply with Local Rule 7.1 of the Local Rules of Practice for this Court.  Local Rule 7.1(a)(3) requires a Statement of Material Facts that sets forth, in numbered paragraphs, each material fact about which the moving party contends there exists no genuine dispute, supported by a specific citation to the record where that fact is established.  N.D.N.Y. L.R. 7.1(a)(3).  The opposing party must file a response to the Statement of Material Facts that mirrors that Statement by admitting and/or denying each of the movant's assertions in matching numbered paragraphs, supported by specific citations to the record where the factual issue arises. *Id.*  If the opposing party does not specifically controvert any properly supported facts in the Statement of Material Facts, the Court shall deem them to be admitted.  *Id.*

In responding to Plaintiff's Statement of Material Facts, Defendant did not file a statement with corresponding numbered paragraphs in accordance with Local Rule 7.1(a)(3). (Dkt. No. 61, at 2-4 [Def.'s Opp'n Mem. of Law].)[1]  Defendant argues that Plaintiff did not submit a Statement of Material Facts with numbered paragraphs to which it could respond; however, Plaintiff did indeed submit numbered paragraphs containing asserted facts that Defendant was required to admit or deny.  The only specific fact from Plaintiff's Statement of Material Facts that Defendant explicitly denies is Paragraph 16, in which Defendant argues that, contrary to Plaintiff's assertion, Defendant did not intend to admit that Mr. Wachtel violated VTL Section 1161, citing to a correction it made to a typo in its response to Plaintiff's interrogatories.  (*Id.* at 2-3; Dkt. No. 61, Attach. 1, at 2.)  Consequently, with the exception of this single supported denial, Defendant's failure to admit or deny the remainder of the facts means that this Court deems those unaddressed facts that are supported by the record evidence as admitted.[2]

Unless otherwise noted, the following facts were asserted and supported with accurate record citations by Plaintiff in his Statement of Material Facts and either admitted based on similar statements made in Defendant's Statement of Material Facts or based on Defendant's failure to deny specific facts.  (*Compare* Dkt. No. 51, Attach. 17 [Pl.'s Rule 7.1 Statement] *with* Dkt. No. 61, at 2-4 [Def.'s Opp'n Mem. of Law].)

---

[1]      Page citations refer to the page numbers used on CM/ECF rather than the actual page numbers contained in the respective documents.

[2]      Defendant indicated that it intended to incorporate its Statement of Material Facts from its motion for summary judgment.  (Dkt. No. 61, at 4 [Def.'s Opp'n Mem. of Law].) Consequently, the Court considered whether Defendant implicitly admitted and/or denied specific facts to the extent that Defendant's Statement of Material Facts did or did not agree with Plaintiff's Statement of Facts.

1.    On June 6, 2014, David Wachtel was employed by the United States Postal Service ("USPS").

2.    On that day, he was operating a postal vehicle known as a long life vehicle ("LLV") in the course of such employment.

3.    Defendant contends that, at the time of the incident in question, Mr. Wachtel was "actually engaged in work on a highway" within the meaning of VTL § 1103(b) because Mike Krout Road was and is a public highway and "Mr. Wachtel was working within the course of his employment with the USPS by delivering mail on Rural Route 6 in accordance with that Route's line of travel."

4.    Defendant relies on no other facts in support of its contention that Mr. Wachtel was "actually engaged in work on a highway" within the meaning of Section 1103(b).

5.    Defendant does not contend that, on June 6, 2014, Mr. Wachtel constructed, repaired, or maintained any roads that were part of Rural Route 6.

6.    Defendant does not contend that, on June 6, 2014, it was Mr. Wachtel's intention to construct, repair, or maintain any roads that were part of Rural Route 6, or that he was assigned to do so.

7.    Defendant does not contend that the LLV that Mr. Wachtel was operating on June 6, 2014, was designed or equipped to perform any kind of road construction, repair, or maintenance work.

8.    On June 6, 2014, Plaintiff was operating a motorcycle in an easterly direction on Mike Krout Road.

9.      On June 6, 2014, as Plaintiff was proceeding in an easterly direction on Mike Krout Road, Mr. Wachtel made a U-turn, as defined in VTL § 158-a, on that road at or near 100 Mike Krout Road.

10.     On that day, as the postal vehicle was making such a U-turn, there was contact between the LLV and the motorcycle being operated by Plaintiff.

11.     The contact occurred in the vicinity of 100 Mike Krout Road in the Town of Saugerties, State of New York.

12.     As a result of the contact or impending contact, Plaintiff was caused to be ejected from the motorcycle and sustained personal injuries.

13.     The part of Mike Krout Road that is in front of 100 Mike Krout Road is on a curve.

14.     Section 1161(a) of the New York Vehicle and Traffic Law provides that "[n]o motor vehicle shall make a U-turn upon any curve, or upon the approach to, or near the crest of a grade, where such motor vehicle cannot be seen by the driver of any other motor vehicle approaching from either direction within five hundred feet."

15.     The LLV at 100 Mike Krout Road would not have been visible to a vehicle approaching from the east if it was 500 feet away from the LLV.

16.     Mr. Wachtel pled guilty to violating Section 1161(a).

17.     Plaintiff's line of sight from the point where he came out of the curve on Mike Krout Road to 100 Mike Krout Road was estimated by Defendant's expert, Eugene Camerota, to be approximately 336 feet and by Plaintiff's expert to be less than 350 feet.

18.     Plaintiff presented a claim to the USPS on August 5, 2014.

**C.    Undisputed Material Facts on Defendant's Motion for Summary Judgment**

Unless otherwise noted, the following facts were asserted and supported with accurate record citations by Defendant in his Statement of Material Facts and expressly admitted by Plaintiff in his response thereto or denied without appropriate record citations.  (*Compare* Dkt. No. 57, Attach. 2 [Def.'s Rule 7.1 Statement] *with* Dkt. No. 62, Attach. 3 [Pl.'s Rule 7.1 Resp.].)

1.    Plaintiff's lawsuit arises out of a motor vehicle accident that occurred in the late morning on June 6, 2014.

2.    June 6, 2014, was a clear, sunny day in Saugerties, New York.

3.    The accident occurred at 100 Mike Kraut Road, Saugerties, New York.

4.    Mike Krout Road is a publically maintained road that is open to the public for purposes of vehicular traffic.

5.    When the accident occurred, Plaintiff was driving a 1980 Yamaha 400 Special motorcycle on Mike Krout Road.[3]

6.    Before the accident, Plaintiff's father had noticed that the rear tire needed replacing.

7.    Plaintiff's father informed Plaintiff that the rear tire needed replacement.

8.    Plaintiff's father did not anticipate that anyone would ride the motorcycle until he had an opportunity to replace the bald rear tire.

_____

[3]    Plaintiff denied Defendant's assertion that the motorcycle was owned by his father, asserting that he testified in his deposition that he owned the motorcycle.  (Dkt. No. 62, Attach. 3, at 1 [Pl.'s Rule 7.1 Resp.].)  Because the evidence cited by both parties supports each of their assertions, the portion of Defendant's ¶ 5 regarding the ownership of the motorcycle has been omitted from this asserted fact.  However, because both parties appear to agree (and the cited evidence supports) that Plaintiff was driving the specified motorcycle on June 6, 2014, this portion of ¶ 5 has been included.

9.      At the time of the accident, Plaintiff was heading home on Mike Krout Road after leaving his work at Blue Mountain Paving.

10.     Mr. Wachtel was driving the USPS vehicle that Plaintiff hit on June 6, 2014.

11.     At the time of the accident, Mr. Wachtel was a rural mail carrier for the USPS.

12.     At the time of the accident, Mr. Wachtel had been employed as a mail carrier for the USPS for the prior 28 years.

13.     At the time of the accident, Mr. Wachtel was engaged in his work for the USPS delivering mail along Mike Krout Road.

14.     Mr. Wachtel's mail route, which took him along Mike Krout Road, was known as Rural Route 6.

15.     The mail route that Mr. Wachtel was required to follow for Rural Route 6 was set forth on PS Form 4003, also known as a "line of travel report."[4]

16.     Rural Route 6 required that the carrier turn around at 100 Mike Krout Road.

17.     When Mr. Wachtel departed the Saugerties Post Office on the morning of June 6, 2014, to perform his mail deliveries, the four-way hazard lights on Mr. Wachtel's LLV were operational and were in the "on" position.

18.     In order to fulfill their mission of delivering mail, USPS rural letter carriers must make frequent stops and drive below the posted speed limit.

---

[4]      (*Compare* Dkt. No. 57, Attach. 2, at ¶ 20 [Def.'s Rule 7.1 Statement, asserting the above-stated fact and citing record evidence establishing the above-stated fact] *with* Dkt. No. 62, Attach. 3, at ¶ 20 [Pl.'s Rule 7.1 Resp., admitting the above-stated fact but adding additional facts].) *See Goldstick v. The Hartford, Inc.*, 00-CV-8577, 2002 WL 1906029, at *1 (S.D.N.Y. Aug. 19, 2002) (striking plaintiff's Rule 7.1 statement, in part, because plaintiff added "argumentative and often lengthy narrative in almost every case, the object of which is to 'spin' the impact of the admissions plaintiff has been compelled to make").

19.     In order to deliver mail, rural carriers must also frequently ride on the shoulder of busy roads and perform U-turns in the middle of a road.

20.     These operations and maneuvers will restrict, impede, or interfere with the normal flow of traffic.[5]

21.     The USPS mail trucks, known as LLVs, are equipped with hazard lights that are utilized when a USPS driver is engaged in the delivery of mail.

22.     Mr. Wachtel first started as the mail carrier on Rural Route 6 in 1988.

23.     Mr. Wachtel switched to a different route for a time, but he returned to Rural Route 6 in 2006.

24.     From 2006 through June 6, 2014, Mr. Wachtel was the full-time carrier for Rural Route 6.

25.     Plaintiff testified that, just prior to the accident on June 6, 2014, he observed Mr. Wachtel's LLV about 50 feet east of the mailbox at 100 Mike Krout Road.

26.     As Plaintiff approached the LLV, there was no other traffic on the road.

27.     As the Plaintiff traveled on Mike Krout Road at 25 mph, Plaintiff observed the LLV pull into the driveway at 100 Mike Krout Road.[6]

---

[5]     Plaintiff denies this statement, but his reasoning for that denial does not actually address the statement made in this paragraph, nor does the portion of the record referred to support Plaintiff's denial. (Dkt. No. 62, Attach. 3, at ¶ 25 [Pl.'s Rule 7.1 Resp.].) Consequently, this statement is deemed admitted. *See Holtz v. Rockafeller & Co.*, 258 F.3d 62, 73-74 (2d Cir. 2001) (noting that, "where the cited materials do not support the factual statement in the Statements, the Court is free to disregard the assertions").

[6]     Although Plaintiff purports to deny this statement, he offers no evidence that this was not his testimony, and in fact admits that it was. (Dkt. No. 62, Attach. 3, at ¶ 33 [Pl.'s Rule 7.1 Resp.].) He bases his denial on testimony from Mr. Wachtel, which in no way undermines the underlying statement regarding what Plaintiff testified he *observed*. Because the cited evidence therefore does not support Plaintiff's denial of Defendant's actual statement, this statement is deemed admitted. *Holtz*, 258 F.3d at 73-74.

28.    Plaintiff then observed the LLV start to come out onto Mike Krout Road for a turn.[7]

29.    It was Mr. Wachtel's routine practice to keep his hazard lights on, instead of using his turn signal, when turning around at Mike Krout Road.

30.    Mr. Wachtel's four-way flashers were in the "on" position and were operational when he left the Post Office to begin his route that day.

31.    Plaintiff cannot recall whether the LLV's four-way flashers were on when he approached.

32.    Mr. Wachtel checked his mirrors before beginning the U-turn.

33.    Mr. Wachtel first checked the right mirror and then his left mirrors.

34.    Plaintiff could have come to a stop if he felt the need to.[8]

35.    When Plaintiff observed the LLV coming out to make a turn, he "tried to get on the other side of him."

---

[7]    Plaintiff denies this statement, asserting that Defendant's use of the term "come out" is ambiguous because Plaintiff never used those words and they do not indicate where the LLV came out from.  (Dkt. No. 62, Attach. 3, at ¶ 34 [Pl.'s Rule 7.1 Resp.].)  However, the portion of Plaintiff's testimony cited by Defendant in support of this statement makes it clear that Plaintiff testified that Mr. Wachtel pulled out into the road after turning slightly into the driveway at 100 Mike Krout Road.  (Dkt. No. 57, Attach. 9, at 50-52 [Pl.'s Dep.].)  The cited testimony therefore supports Defendant's statement despite the fact that Plaintiff used the term "pull out" rather than "come out" onto Mike Krout Road.  Because Plaintiff does not cite record evidence showing that Defendant's statement is inaccurate, it is deemed admitted.  *Holtz*, 258 F.3d at 73-74; *see Archie Comic Publ'ns, Inc. v. DeCarlo*, 258 F. Supp. 2d 315, 319 (S.D.N.Y. 2003) (holding that "the facts set forth in [plaintiff's] statement are deemed established" where defendant denied assertions in plaintiffs Rule 56.1 statement but declined to provide record citations in support).

[8]    Plaintiff denies this statement, citing generally to "the entirety of [Plaintiff's] testimony at pages 64-65.  (Dkt. No. 62, Attach. 3, at ¶ 43 [Pl.'s Rule 7.1 Resp.].)  However, there is nothing within these pages that contradicts the statement cited by Defendant.  Consequently, this statement is deemed admitted.  *Holtz*, 258 F.3d at 73-74.

36.    Plaintiff "slammed on the back brakes" and the back brake locked up.

37.    Plaintiff then threw the motorcycle and jumped into the grass.

38.    The 34-year-old motorcycle Plaintiff was driving hit the LLV's rear driver's side

tire.

39.    Plaintiff alleges in his Complaint that, when Mr. Wachtel performed a U-turn, it

caused the "motorcycle to . . . slide."

40.    Detective[9] Patrick Hastings' diagram on the police accident report of June 6,

2014, shows the LLV heading back in a westerly direction on Mike Krout Road.

41.    Detective Hastings' diagram accurately reflects the location of the vehicles when

he arrived at the scene.[10]

42.    Detective Hastings concluded that the LLV had nearly completed its U-turn and

was headed west when Plaintiff's motorcycle struck the rear driver's side tire.

43.    Detective Hastings photographed a single skid mark in the middle of Mike Krout

Road, which he believed to be from Plaintiff's motorcycle.

---

[9]    Although Plaintiff correctly notes that the Police Accident Report refers to Detective Hastings as a Patrolman at the time of the accident, Detective Hastings' Declaration of March 22, 2017, shows that he is currently a Detective.  (Dkt. No. 57, Attach. 15, at 3, 7.) Because it is not clear that Detective Hastings' specific rank is itself a material fact in this case, he will be referred to as Detective Hastings in this Decision and Order.

[10]    Plaintiff denies this statement, citing to testimony from Joanna Groff that the LLV was in a different position when she arrived at the scene.  (Dkt. No. 62, Attach. 3, at ¶ 43 [Pl.'s Rule 7.1 Resp.].)  However, Plaintiff does not cite any testimony from Ms. Groff that she arrived at the scene at the same time as Detective Hastings.  Consequently, Ms. Groff's testimony does not contradict Defendant's statement inasmuch as it states that Detective Hastings' diagram was accurate at the time *he* arrived at the scene.  This statement is deemed admitted.  *Holtz*, 258 F.3d at 73-74.

44.    Detective Hastings gave both Mr. Wachtel and Plaintiff traffic tickets at the scene of the accident.

45.    Mr. Wachtel received a ticket for performing a U-turn in a location that violated VTL § 1161(a).[11]

46.    Mr. Wachtel's traffic ticket for failing to yield the right-of-way to Plaintiff was dismissed.

47.    Plaintiff received a ticket for operating a motorcycle with a bald rear tire.

48.    EMTs arrived from Diaz Ambulance to provide medical attention to Plaintiff.

49.    Plaintiff told EMTs that "he hit a mail truck" and he complained of back pain.

50.    Plaintiff was transferred to Kingston Hospital where he again provided an account of the accident, stating that he was "riding [his motorcycle] and ran into the back of a truck."

51.    Plaintiff was ultimately diagnosed with a fracture of the lumbar spine and he was transported to Albany Medical Center.

52.    At Albany Medical Center, Plaintiff underwent back surgery and was discharged home on June 12, 2014.

53.    When he was discharged, Plaintiff was ambulatory and he was directed to follow-up on an outpatient basis with physical therapy.

---

[11]    (*Compare* Dkt. No. 57, Attach. 2, at ¶ 55 [Def.'s Rule 7.1 Statement, asserting the above-stated fact and citing record evidence establishing the above-stated fact] *with* Dkt. No. 62, Attach. 3, at ¶ 55 [Pl.'s Rule 7.1 Resp., admitting the above-stated fact but adding additional facts].)  *See Goldstick*, 2002 WL 1906029, at *1.

**D.**     **Parties' Briefing on the Pending Motions**

**1.**     **Plaintiff's Partial Motion for Summary Judgment**

**a.**     **Plaintiff's Memorandum of Law**

In his motion for partial summary judgment, Plaintiff requests that the Court (a) dismiss Defendant's Twelfth Affirmative Defense because the applicable legal standard of care is negligence rather than recklessness, and (b) grant summary judgment on the issue of whether Mr. Wachtel breached his duty of care based on his performance of a U-turn that was unlawful under VTL § 1161(a).[12]  (Dkt. No. 51, Attach. 18, at 5 [Pl.'s Mem. of Law].)  More specifically, first, Plaintiff argues that the applicable standard is negligence because Mr. Wachtel was not "actually engaged in work on a highway" as required by VTL § 1103(b) for application of a recklessness standard.  (*Id*. at 13-18.)  Second, Plaintiff argues that Mr. Wachtel's violation of VTL § 1161 (which prohibits U-turns in relevant situations) amounts to negligence per se (meaning a breach of the duty of care based on violation of a statute) because that statute specifies elements that define the duty Mr. Wachtel owed to other drivers when making a U-turn. (*Id*. at 22-23.)

---

[12]     On page three of his memorandum of law, Plaintiff argues that he is seeking summary judgment only on the elements of the existence of a duty and breach of that duty, not on the element of proximate causation, which is a separate and distinct element in a claim of negligence.  *Cf. Mahar v. U.S. Xpress Enters., Inc.*, 688 F. Supp. 2d 95, 108 (N.D.N.Y. 2010) (Sharpe, J.) (noting that "'evidence of [breach of an owed duty] is not enough by itself to establish liability,'" but that "it must be proved that the [breach] was the cause of the event which produced the harm alleged," and that even where a court finds negligence per se [*i.e.*, breach of the owed duty] based on a violation of a statute or ordinance, "proximate cause is still an essential element of liability.") (quoting *Sheehan v. City of New York*, 354 N.E.2d 832 [N.Y. 1976]).

### b.    Defendant's Opposition Memorandum of Law

Generally, in opposition to Plaintiff's motion, Defendant makes three arguments.  First, in opposition to Plaintiff's first argument, Defendant argues that rural letter carriers engaged in their official duties on a highway are entitled to the higher recklessness standard. (Dkt. No. 61, at 4-7 [Def.'s Opp'n Mem. of Law].)  Second, in opposition to Plaintiff's second argument, Defendant argues that the FTCA does not create liability under a negligence per se theory because the FTCA does not waive the Government's sovereign immunity such that it can be held liable under strict or absolute liability standards.  (*Id.* at 8-10.)  Additionally, Defendant argues that Mr. Wachtel's violation of the statute should be disregarded because he was required to make the unlawful U-turn as part of his route, a route that was devised at the discretion of the USPS.  (*Id.* at 8-9.)  Relatedly, Defendant argues that violation of a traffic law does not establish negligence as a matter of law, but is rather only one factor to consider.  (*Id.* at 10-11.)  Third, Defendant argues that a state traffic law cannot be used to direct or regulate the actions of the USPS (an entity of the federal government) because such a situation would violate the Supremacy Clause of the United States Constitution.  (*Id.* at 11-13.)  Defendant argues that a state statute cannot regulate the conduct of a federal entity, much less serve as a basis for a negligence per se theory of liability against that entity.  (*Id.* at 14.)

### c.    Plaintiff's Reply Memorandum of Law

Generally, Plaintiff makes three arguments in reply to Defendant's opposition memorandum of law.  First, Plaintiff argues again that the applicable standard is ordinary negligence based on New York case law.  (Dkt. No. 69, at 5-7 [Pl.'s Reply Mem. of Law].)  Second, Plaintiff argues that he is not seeking to hold Defendant strictly liable (which would

impose liability regardless of the presence of a negligent act), but rather based on Mr. Wachtel's breach of the duty of care he owed to Plaintiff when executing the unlawful U-turn. (*Id*. at 10.) Plaintiff argues that other courts have found it permissible to apply a negligence per se theory of liability under New York law to government defendants (including the USPS). (*Id*.) Plaintiff re-iterates that he is not seeking summary judgment on the element of proximate cause and overall liability, but rather only on the elements of duty of care and breach of that duty. (*Id*. at 10-11.) Third, Plaintiff argues that the Supremacy Clause does not bar application of New York traffic laws to USPS drivers, noting in particular that the USPS has adopted policies that indicate their drivers are subject to those traffic laws. (*Id*. at 11-12.)

### 2.    Defendant's Motion for Summary Judgment

#### a.    Defendant's Memorandum of Law

In its motion for summary judgment, Defendant requests that the Court (a) dismiss Plaintiff's Second Claim based on the discretionary function exception to the FTCA, and (b) grant summary judgment for Defendant on Plaintiff's First Claim because Plaintiff has not adduced evidence that Defendant acted recklessly, or even negligently. (Dkt. No. 57, Attach. 3, at 2-4, 13, 26-28 [Def.'s Mem. of Law].) First, Defendant argues that Plaintiff's Second Claim is barred by the discretionary function exception to the FTCA because (a) the USPS exercised discretion when designing and inspecting Rural Route 6, and (b) the decision to include a U-turn at the place where the accident occurred is susceptible to policy analysis. (*Id*. at 17-23.) Relatedly, Defendant argues that a state law such as the traffic law at issue here cannot serve as a mandate on the federal government that would suggest that the USPS did not have discretion in designing the route. (*Id*. at 19-21.) Second, Defendant argues that Plaintiff has not adduced

sufficient evidence to meet the burden of proof to show that Mr. Wachtel acted recklessly, and has failed to create a genuine dispute of material fact as to whether Mr. Wachtel was negligent. (*Id.* at 23-28.)

> **b.** **Plaintiff's Opposition Memorandum of Law**

Generally, in opposition to Defendant's motion, Plaintiff makes two arguments.  First, in opposition to Defendant's first argument, Plaintiff concedes that the second prong of the discretionary function test has been met, but argues that there is a genuine dispute of material fact as to whether the USPS was exercising discretionary authority to include an unlawful U-turn in Rural Route 6.  (Dkt. No. 62, at 8-9 [Pl.'s Opp'n Mem. of Law].)  Plaintiff argues that the USPS postal worker handbooks requiring postal drivers to follow the same traffic laws as other motorists are federal rules that sufficiently eliminated the Postmaster's authority to devise a route that requires USPS drivers to violate the VTL.  (*Id*. at 10-12.)  Second, in opposition to Defendant's second argument, Plaintiff argues again that the applicable standard is negligence, but asserts, in the alternative, that there is a genuine dispute of material fact as to whether Defendant acted recklessly if that is determined to be the applicable standard.  (*Id.* at 20-29.)

> **c.** **Defendant's Reply Memorandum of Law**

Generally, Defendant makes five arguments in reply to Plaintiff's opposition memorandum of law.  First, Defendant argues that Mr. Wachtel was engaged in work on a highway at the time of the accident and therefore the recklessness standard applies.  (Dkt. No. 70, at 1-3 [Def.'s Reply Mem. of Law].)  Second, Defendant argues that the admissible record evidence establishes that Mr. Wachtel's violation of the traffic law was not the proximate cause of the collision.  (*Id.* at 4-5.)  Third, Defendant argues that there is no federal statute that

mandates how the USPS designs its mail routes, and that statements from the USPS handbooks are not a federal policy that restricts the USPS' ability to design routes in ways that are contrary to state traffic laws. (*Id.* at 6-7.) Fourth, Defendant argues again that state traffic laws cannot be used to impose strict liability on the federal government. (*Id.* at 8-9.) Fifth, and finally, Defendant argues that, because there is no evidence establishing that Mr. Wachtel acted negligently or recklessly, there is no genuine dispute of material fact and summary judgment should be granted to Defendant on Claim One. (*Id.* at 9-10.)

### 3. Plaintiff's Cross-Motion

#### a. Plaintiff's Memorandum of Law

As part of his opposition to Defendant's motion for summary judgment, Plaintiff raises a cross-argument that inconclusive evidence of his alleged marijuana use should be excluded for the purposes of both this motion and trial pursuant to Fed. R. Evid. 403 because that evidence is not material or relevant, and the prejudicial effect of admitting the evidence would outweigh the probative value. (Dkt. No. 62, Attach. 4, at 29-30 [Pl.'s Opp'n Mem. of Law].)

#### b. Defendant's Opposition Memorandum of Law

In opposition to Plaintiff's cross-motion, Defendant argues that the motion should be denied without prejudice because it is premature, or, if considered, because Plaintiff's credibility regarding drug use on the morning of the accident is material to the issue of proximate cause and contributory liability. (Dkt. No. 70, at 10-11 [Def.'s Reply Mem. of Law].) Defendant also argues that, because any trial in this case would be a bench trial, the Court should not exclude evidence because it will know what evidence is proper to consider. (*Id.*)

## II.    LEGAL STANDARD GOVERNING A MOTION FOR SUMMARY JUDGMENT

Under Fed. R. Civ. P. 56, summary judgment is warranted if "the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute of fact is "genuine" if "the [record] evidence is such that a reasonable jury could return a verdict for the [non-movant]." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).[13] As for the materiality requirement, a dispute of fact is "material" if it "might affect the outcome of the suit under the governing law . . . . Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248.

In determining whether a genuine issue of material fact exists, the Court must resolve all ambiguities and draw all reasonable inferences against the movant. *Anderson*, 477 U.S. at 255. In addition, "[the movant] bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the . . . [record] which it believes demonstrate[s] the absence of any genuine issue of material fact." *Celotex v. Catrett*, 477 U.S. 317, 323-24 (1986). However, when the movant has met its initial burden, the non-movant must come forward with specific facts showing a genuine issue of material fact for trial. Fed. R. Civ. P. 56(a), (c), (e).[14]

---

[13]    As a result, "[c]onclusory allegations, conjecture and speculation . . . are insufficient to create a genuine issue of fact." *Kerzer v. Kingly Mfg.*, 156 F.3d 396, 400 (2d Cir. 1998) [citation omitted]. As the Supreme Court has explained, "[The non-movant] must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585-86 (1986).

[14]    Among other things, Local Rule 7.1(a)(3) requires that the non-movant file a response to the movant's Statement of Material Facts, which admits or denies each of the movant's factual assertions in matching numbered paragraphs, and supports any denials with a specific citation to the record where the factual issue arises. N.D.N.Y. L. R. 7.1(a)(3).

III.    **ANALYSIS**[15]

    A.    **Whether the Heightened Standard of Recklessness Governs Plaintiff's Claims**

After carefully considering the matter, the Court answers this question in the negative for the reasons stated in Plaintiff's memoranda of law. (Dkt. No. 51, Attach. 18, at 12-21 [Pl.'s Mem. of Law]; Dkt. No. 69, at 5-7 [Pl.'s Reply Mem. of Law].) To those reasons, the Court adds the following analysis.

Section 1103(b) of the New York Vehicle and Traffic Law states that Sections 1192 through 1196 of that title (regulating driving conduct) do not apply to "persons, teams, motor vehicles, and other equipment while actually engaged in work on a highway," and that Section 1202(a) (related to stopping, standing, and parking) does not apply to "hazard vehicles when actually engaged in hazardous operation on or adjacent to a highway." N.Y. Veh. & Traf. Law § 1103(b). It further states that these exceptions (a) "shall not relieve any person, [] team, or any operator of a motor vehicle or other equipment while actually engaged in work on a highway from the duty to proceed at all times during all phases of such work with due regard for the safety of all persons," and (b) shall not "protect such persons or teams or such operators of motor vehicles or other equipment from the consequences of their reckless disregard for the safety of others." *Id.*

---

[15]    Section 1346(b) of Title 28 of the United States Code provides that, in FTCA cases, the liability of the United States for negligent acts is "in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b). Both parties agree that the applicable substantive law in this case is New York law because the accident occurred in New York State. (Dkt. No. 51, Attach. 18, at 6 [Pl.'s Mem. of Law]; Dkt. No. 57, Attach. 3, at 11 [Def.'s Mem. of Law].)

Both parties acknowledge that the vehicle driven by a rural letter carrier such as Mr. Wachtel is classified as a hazard vehicle under VTL § 117-a, and therefore is exempt from the stopping, standing, and parking restrictions in Section 1202(a). However, because Mr. Wachtel's conduct at issue in this case (a U-turn violating Section 1161[a]) did not involve stopping, standing, or parking as discussed in Section 1202(a), he was not exempt from following Section 1161 by virtue of driving a hazard vehicle engaged in hazardous operation. N.Y. Veh. & Traf. Law § 1103(b). Consequently, a recklessness standard is not applicable to Mr. Wachtel based on his status as a driver of a hazard vehicle engaged in hazardous operation.[16] Nonetheless, Section 1103(b) provides another situation in which the recklessness standard applies: when the actor is "actually engaged in work on a highway." *Id.* Because the parties disagree as to whether Mr. Wachtel was "actually engaged in work on a highway," that is the pertinent question the Court must answer.

---

[16]     The Court notes that there are conflicting indications of whether the recklessness standard applies to hazard vehicles engaged in hazardous operation. A plain reading of Section 1103(b) suggests that the recklessness portion of Section 1103(b) is applicable only to those actually engaged in work on a highway based on the lack of reference to hazard vehicles engaged in hazardous operation when discussing the standard of care. N.Y. Veh. & Traf. Law § 1103(b). *See also Cottingham v. State*, 701 N.Y.S.2d 290, 299-300 (N.Y. Ct. Cl. 1999) (noting that Section 1103(b) "does not explicitly make the reckless disregard standard of care applicable to hazard vehicles"). However, a memorandum from the New York Attorney General from April 17, 1974, indicates that the changes to Section 1103(b) were intended to "extend the standard of care presently applicable to drivers of authorized emergency vehicles under § 1104 of said law to persons engaged in maintenance and hazardous operations." (Dkt. No. 61, Attach. 3, at 3.) *See also Green v. Covington*, 750 N.Y.S.2d 162, 163-64 (N.Y. App. Div. 3rd Dep't 2002) (finding that the recklessness standard was applicable where a hazard vehicle was stopped on the side of the road). Fortunately, the Court need not decide whether the recklessness standard applies to hazard vehicles engaged in hazardous operation because Mr. Wachtel's U-turn was not the type of conduct that hazard vehicles engaged in hazardous operation are exempted from under Section 1103(b).

The Court agrees with Plaintiff that the relevant case law supports a much narrower definition of "actually engaged in work on a highway" than Defendant suggests. More specifically, decisions from New York courts generally interpret "work on a highway" to constitute conduct such as road maintenance, construction and repair, snow plowing, and street sweeping. *See Oliveira v. City of Mount Vernon*, 209 F. App'x 82, 83-84 & n.1 (2d Cir. 2006) (finding that a snowplow was entitled to the recklessness standard not because it was a hazard vehicle but because it was actually engaged in work on a highway at the time of the accident); *Deleon v. New York City Sanitation Dep't*, 35 N.E.3d 1102, 1106 (N.Y. 2015) (finding the recklessness standard applicable for a street sweeper where the driver was operating the sweeper at the time of the accident ); *Riley v. County of Broome*, 742 N.E.2d 98, 102 (N.Y. 2000) (noting that the legislative history of Section 1103[b] indicates that the intention was to "create a broad exception from the rules of the road for all vehicles engaged in highway construction, maintenance, or repair, regardless of their classification" and that "the exemption turns on the nature of the work being performed (construction, repair, maintenance or similar work)–not on the nature of the vehicle performing the work"); *Bliss v. State*, 742 N.E.2d 106, 106-07 (N.Y. 2000) (finding that a construction truck was entitled to the recklessness standard because he was actually engaged in work on a highway at the time of the accident); *Matsch v. Chemung Cnty. Dep't Pub. Works*, 9 N.Y.S.3d 724, 725-26 (N.Y. App. Div. 3rd Dep't 2015) (finding the recklessness standard applied to a street sweeper); *Gawron v. Town of Cheektowaga*, 984 N.Y.S.2d 715, 716 (N.Y. App. Div. 4th Dep't 2014) (applying the recklessness standard to a truck with a plow that was removing water from a road); *Ryan v. Town of Smithtown*, 854 N.Y.S.2d 483, 483-84 (N.Y. App. Div. 2d Dep't 2008) (finding that a dump truck was entitled to the recklessness standard because it was actually engaged in work on a highway when spreading

sand on the roadway during a snowfall); *New York State Elec. & Gas Corp. v. State of New York*, 789 N.Y.S.2d 255, 255-56 (N.Y. App. Div. 2d Dep't 2005) (finding that the recklessness standard was applicable to an employee mowing a grassy area along a state highway to the extent he was engaged in work on a highway).  Although the exact definition of "work on a highway" does not appear in Section 1103(b), the vast number of decisions from New York courts suggest that it involves activities such as construction and maintenance of the road itself.

The only case that Defendant cites that supports its argument that "work on a highway" includes delivering mail is *Haust v. United States*, 11-CV-0153, 2014 WL 1783584 (N.D.N.Y. 2014) (Hurd, J.).  In *Haust*, the court found that a rural letter carrier who was turning around when the accident occurred was entitled to the reckless standard of care based on her status as the "driver of a hazard vehicle engaged in covered work."  *Haust*, 2014 WL 1783584, at *2-3. However, the court did not explain the basis of its finding that delivering mail was considered work covered by Section 1103(b) (i.e., work on a highway).  *Id.*  The court did note that the VTL defines vehicles driven by rural letter carriers as hazard vehicles, but acknowledged that *Riley* concluded that, "'the exemption turns on the nature of the work being performed . . . not on the nature of the vehicle performing the work.'" *Id.* (quoting *Riley*, 742 N.E.2d at 102). Consequently, it is not clear on what basis the court concluded that a rural letter carrier was entitled to the recklessness standard.  This Court therefore respectfully declines to follow the example in *Haust* based on review of decisions of the New York courts.

Defendant also argues that, in *Riley*, the New York Court of Appeals "expressly included rural letter carriers within its definition of vehicles engaged in 'road work' under [Section] 1103(b)."  (Dkt. No. 61, at 5 [Def.'s Opp'n Mem. of Law].)  However, there are multiple flaws

in Defendant's argument.  First, as Defendant acknowledges, the portion of *Riley* where rural

letter carriers are mentioned is dicta rather than part of the Court of Appeals' holding.  *See In re*

*Kornblum & Co., Inc.*, 81 F.3d 280, 285 (2d Cir. 1996) (noting that statements in a previous

Second Circuit case were dicta because they were not necessary to resolve the issue presented

and therefore were not controlling).  Second, even if this Court were to follow the Court of

Appeals' dicta, the statements that Defendant cites do not support its argument.  Notably,

although *Riley* cites language that specifically mentions rural letter carriers, the court never

suggests, as Defendant argues, that rural letter carriers delivering mail are "actually engaged in

work on a highway." *Riley*, 742 N.E.2d at 105.  Such a suggestion would be inconsistent with

the court's actual finding that "work on a highway" corresponded with activities like "highway

construction, maintenance, or repair." *Riley*, 742 N.E.2d at 102.  Third, Defendant's focus on the

dicta in *Riley* is misplaced because the case that *Riley* quotes for the language discussing rural

letter carriers (*Gawelko v. State*, 710 N.Y.S.2d 762 [N.Y. Ct. Cl. 2000]) states that the standard

for imposing liability is that of reckless disregard "when each category of vehicle [(emergency,

hazard, etc.)] is operated properly *within its area of exemption*. . . .'" *Gawelko*, 710 N.Y.S.2d at

764 (emphasis added).[17]  Performance of a U-turn is not within the area of exemption for hazard

vehicles, as discussed previously.  Indeed, the *Riley* court specifically noted that the portion of

---

[17]    Although the language from *Gawelko* that is quoted in *Riley* appears to suggest
that the *Gawelko* court found that rural letter carriers are permitted to engage in activities such as
speeding, driving on the wrong side of the road, ignoring pedestrian rights and right-of-ways,
and disregarding traffic signs and signals, it is clear from the full context of that decision that this
was not the court's interpretation. *Gawelko*, 710 N.Y.S.2d at 764.  Taken in context, the quoted
language was part of the court's discussion of the fact that Section 1103(b) exempts hazard
vehicles not actually engaged in work on a highway only from the provisions of Section 1202(a)
rather than including them in the broader exemption otherwise mentioned in Section 1103(b) for
vehicles actually engaged in work on a highway. *Id*.

Section 1103(b) related to hazard vehicles engaged in hazardous operation is "wholly unrelated" to the portion related to vehicles (including hazard vehicles) actually engaged in work on a highway. *Riley*, 742 N.E.2d at 102. Simply stated, neither *Riley* nor *Gawelko* support Defendant's argument that the recklessness standard should be applied to Mr. Wachtel, because he (a) was not engaged in work on a highway as the New York courts have interpreted that term, and (b) was engaged in conduct that went beyond the scope of exemption for hazard vehicles engaged in hazardous conduct.

Defendant also argues that *Matsch* supports its interpretation, but that reliance is likewise misplaced. (Dkt. No. 61, at 6-7 [Def.'s Opp'n Mem. of Law].) Specifically, Defendant argues that the court in *Matsch* found the recklessness standard applied because the driver was actually working at the time of the accident. However, the court in *Matsch* also found that the driver was engaged in street sweeping, a type of road maintenance that is consistent with the interpretation of "work on a highway" as noted in the cases cited previously. (*Id.*) *Matsch*, 9 N.Y.S.3d at 725-26. Defendant's assertion that the question of whether the driver was "actually engaged in work" (of any kind) is the same as whether that work was "work on a highway" is not consistent with *Riley,* in which the Court of Appeals noted that it is the "nature of the work being performed" that is important when determining whether a driver is engaged in work on a highway. *Riley*, 742 N.E.2d at 102. Nothing in *Matsch* supports Defendant's argument that merely driving on a road while delivering mail is sufficient to constitute engaging in "work on a highway."[18]

---

[18]    In its memorandum of law, Defendant also cites numerous cases in which emergency and hazard vehicles were held not liable under the recklessness standard when performing a U-turn. (Dkt. No. 57, Attach. 3, at 24-25 [Def.'s Mem. of Law].) However, all of

As Plaintiff states in his Statement of Material Facts, Defendant has not produced any admissible record evidence that Mr. Wachtel was engaged in any work other than delivering mail while driving. Because there is no genuine dispute of material fact as to whether Mr. Wachtel was "actually engaged in work on a highway" as that phrase has been interpreted by New York courts, the Court finds that summary judgment on this issue is appropriate. Therefore, Defendant's Twentieth Affirmative defense is dismissed, and the standard governing Plaintiff's claim is negligence.

### B.    Whether Mr. Wachtel's Actions Breached the Applicable Duty of Care

After carefully considering the matter, the Court answers this question in the affirmative for the reasons stated in Plaintiff's memoranda of law. (Dkt. No. 51, Attach. 18, at 22-24 [Pl.'s Mem. of Law]; Dkt. No. 69, at 10 [Pl.'s Reply Mem. of Law].) To those reasons, the Court adds the following analysis.

As discussed in Part III.A. of this Decision and Order, the applicable standard in this case is negligence. "In order to prevail on a negligence claim, 'a plaintiff must demonstrate (1) a duty owed by the defendant to the plaintiff, (2) a breach thereof, and (3) injury proximately resulting therefrom.'" *Pasternack v. Lab. Corp. of Am. Holdings*, 59 N.E.3d 485, 490 (N.Y. 2016) (quoting *Solomon v. City of New York*, 489 N.E. 1294 [1985]).[19]

_____

these cases involve either emergency vehicles engaged in emergency operation or vehicles that were engaged in work on a highway (snow plowing, spreading salt on the road, etc.). Because Defendant has adduced no evidence that Mr. Wachtel was engaged in work on a highway according to how that term has been interpreted by New York courts, these cases do not contradict this Court's analysis or findings.

[19]    This standard makes clear that whether the defendant breached the duty of care is a separate issue from whether that breach was the proximate cause of the plaintiff's injury; both must be proven in order to establish that the defendant is liable. As this Court has recognized

1.     **Whether the United States Can Be Found to Have Breached Its Duty of Care Under a Negligence Per Se Theory of Liability in an FTCA Claim**

After carefully considering the matter, the Court answers this question in the affirmative for the reasons stated in Plaintiff's reply memorandum of law. (Dkt. No. 69, at 10 [Pl.'s Reply Mem. of Law].) To those reasons, the Court adds the following analysis.

Defendant argues that finding the United States breached its duty of care under a theory of negligence per se would amount to an imposition of strict liability, noting that the FTCA does not waive the United States's sovereign immunity on a strict liability basis but rather requires a negligent act or omission. (Dkt. No. 57, Attach. 3, at 20-21 [Def.'s Mem. of Law]; Dkt. No. 61, at 9-10 [Def.'s Opp'n Mem. of Law].) However, setting aside the fact that the breach of a duty of care does not by itself give rise to a claim for negligence, the Court agrees with Plaintiff that negligence per se and strict liability are not the same legal concept. (Dkt. No. 69, at 10 [Pl.'s Reply Mem. of Law].) *See also Bauer v. Female Acad. of Sacred Heart*, 767 N.E.2d 1136, 1141 (N.Y. 2002) (noting that "proof of no safety devices at all were provided could form the basis for strict liability (as well as a finding of negligence per se);" the fact that the court found these were two distinct findings suggests they are not the same legal concept); *DiSilvestro v. Samler*, 821 N.Y.S.2d 632, 634 (N.Y. App. Div. 2d Dep't 2006) ("While the violation of a statute constitutes negligence per se, that does not necessarily give rise to a determination that there is absolute or strict liability for damages proximately caused by the violation of the statute or statutes.") (citations omitted); *see also Bole v. United States*, 3 F. Supp. 3d 491, 507-08 (M.D.N.C. 2014) (noting that, "[a]s an initial matter and contrary to the Government's assertions, negligence per

_____

previously, under New York law, "'[e]vidence of [breach of the duty of care] is not enough to establish liability.'" *Mahar*, 688 F. Supp. 2d at 108 (quoting *Sheehan*, 354 N.E.2d 832).

se liability is not strict liability," and citing examples of cases where courts have allowed negligence per se claims under the FTCA).  Contrary to Defendant's argument, Plaintiff does not seek to hold the United States liable without any showing of negligent action.  Rather, Plaintiff argues that Mr. Wachtel breached the duty of care outlined in the applicable statute when performing the U-turn in contravention of that statute.  Because a finding of negligence per se still requires a determination that a certain duty of care was applicable to the defendant (in this case, through a traffic statute), and that the defendant breached that duty by his actions, the Court finds that negligence per se does not amount to strict liability.  Additionally, as noted previously, a finding of negligence per se does not make a party liable, as it still must be established that the action giving rise to the negligence per se finding was the proximate cause of the alleged injury.

Additionally, as Plaintiff notes in his reply memorandum of law, courts within the Second Circuit have found a breach of the duty of care in FTCA cases under a theory of negligence per se where the duty of care arose under state law, specifically state traffic laws. (Dkt. No. 69, at 10 [Pl.'s Reply Mem. of Law].)  *See also Velasquez v. United States Postal Serv.*, 155 F. Supp. 3d 218, 228 (E.D.N.Y. 2016) (finding that violations of multiple sections of the VTL "represent a breach of defendant's duty of care owed to other motorists on the road"); *Moe v. United States*, 668 F. Supp. 2d 497, 505-06 (W.D.N.Y. 2009) (noting that "an unexcused violation of New York's Vehicle and Traffic Law is negligence" while finding that the defendant rural letter carrier had breached her duty of care imposed by the VTL when executing an improper turn and failing to yield the right-of-way to the plaintiff).  Therefore, because the duty giving rise to the theory of negligence per se in this case is from a state statute, and because negligence per se and strict liability are different standards, the Court finds that it would not be

26

beyond the scope of the United States' waiver of sovereign immunity to apply a negligence per se theory to this FTCA claim.

      **2.**      **Whether Mr. Wachtel's Violation of State Traffic Law Constitutes a Breach of the Duty of Care Under a Negligence Per Se Theory of Liability**

After carefully considering the matter, the Court answers this question in the affirmative for the reasons stated in Plaintiff's reply memorandum of law.  (Dkt. No. 69, at 10 [Pl.'s Reply Mem. of Law].)  To those reasons, the Court adds the following analysis.

The New York Court of Appeals has noted that, "[a]s a rule, violation of a State statute that imposes a specific duty constitutes negligence per se," while "violation of a municipal ordinance constitutes only evidence of negligence."  *Elliott v. City of New York*, 747 N.E.2d 760, 762 (N.Y. 2001) (citations omitted); *see also Lowell v. Peters*, 770 N.Y.S.2d 796, 798-99 (N.Y. App. Div. 3rd Dep't 2004) ("[I]t is well settled that where a person violates a statute without an adequate excuse and causes the harm the statute was created to prevent, such violation is negligence per se."); *Baker v. Joyal*, 771 N.Y.S.2d 269, 270 (N.Y. App. Div. 3rd Dep't 2004) (noting that "only an unexcused violation of the VTL constitutes negligence per se"); *Moe*, 668 F. Supp. 2d at 506 (noting that, under New York law, an unexcused violation of a statute is negligence, but the violation can be excused if the defendant establishes that reasonable care was exercised in an effort to comply with the statute).  This court has previously noted that, "where a section of the [VTL] relates to the operation of a vehicle, it creates a statutory standard of care."  *Mahar*, 688 F. Supp. 2d at 108 (citing *Martin v. Herzog*, 126 N.E. 814 [N.Y. 1920]); *Dalal v. City of New York*, 692 N.Y.S. 468 [N.Y. App. Div. 2d Dep't 1999]).  The New York Court of Appeals has recognized that "[n]egligence is failure to exercise the care required by law" and

that, "[w]here a statute defines the standard of care and the safeguards required to meet a recognized danger, [] no other measure may be applied in determining whether a person has carried out the duty of care imposed by law." *Tedla v. Ellman*, 19 N.E.2d 987, 990 (N.Y. 1939).

Section 1161(a) states that "[n]o vehicle shall make a U turn upon any curve, or upon the approach to, or near the crest of a grade, where such motor vehicle cannot be seen by the driver of any other motor vehicle approaching from either direction within [500] feet." N.Y. Veh & Traf. Law § 1161(a). As Plaintiff argues, this statute defines the duty of care that Mr. Wachtel owed to Plaintiff. *Mahar*, 688 F. Supp. 2d at 108; *see also Tedla*, 19 N.E.2d at 990 (noting that "the Legislature may by statute prescribe additional safeguards and may define duty and standard of care []and when the Legislature has spoken, the standard of care is no longer what the reasonably prudent man would do under the circumstances but what the Legislature has commanded"). Defendant does not argue that a different duty applies to Mr. Wachtel, but rather argues that any violation of a traffic law cannot establish negligence per se, an argument that has already been contradicted by the New York case law discussed previously. (Dkt. No. 61, at 10-11 [Def.'s Opp'n Mem. of Law].) Because Section 1161(a) defines when a motorist is permitted to make a U-turn based on considerations of safety for other motorists, the Court finds that it defines the duty of care that Mr. Wachtel owed to Plaintiff when making the U-turn at 100 Mike Krout Road. The statute requires that a motorist performing a U-turn at a curve or grade must do so in a place where he is visible to other motorists from a distance of at least 500 feet; and yet it is an undisputed fact (based on statements from experts for both parties) that the visible distance from the curve in Mike Krout Road where Plaintiff approached to 100 Mike Krout Road where Mr. Wachtel performed the turn was less than 350 feet. *See* Part I.B. ¶ 12 of this Decision and

Order.  Therefore, there is no genuine dispute of material fact that Mr. Wachtel's U-turn at 100

Mike Krout Road violated the specific standard of care outlined in Section 1161(a).  Under New

York law, Mr. Wachtel's violation of Section 1161(a) constitutes a breach of the duty of care

owed to Plaintiff.  Consequently, a finding of negligence per se based on that violation is

appropriate.[20]

The Court hastens to emphasize that, although the Court finds that there is no genuine

dispute of material fact as to whether Mr. Wachtel's conduct breached the duty of care based on

a negligence per se theory of liability under New York law, that does not mean Plaintiff has

succeeded on his First Claim.  *See Mahar*, 688 F. Supp. 2d at 108 ("[E]ven where the negligence

charged is premised in part or in whole on a claim that a statute or ordinance . . . has been

violated, proximate cause is still an essential element to liability.") (citations omitted).  Rather,

because there is a genuine dispute of material fact as to whether Mr. Wachtel's breach of that

duty was the proximate cause of Plaintiff's injuries (including evidence related to Plaintiff's

conduct, the condition of his motorcycle, and the operation of the postal truck's hazard lights),

the Court grants Plaintiff's motion for partial summary judgment on the specific elements of the

existence of a duty and breach of that duty,[21] and denies Defendant's motion for summary

judgment on Plaintiff's First Claim.

_____

[20]    To the extent that Defendant intended to argue that Mr. Wachtel's violation was
excused by the fact that he was required to make such a turn by the mandatory line of travel for
Rural Route 6, this argument is not persuasive for two reasons.  (Dkt. No. 61, at 8 [Def.'s Opp'n
Mem. of Law].)  First, Defendant cites no legal authority in support of this argument.  Second,
Defendant has not produced any admissible record evidence that Mr. Wachtel exercised
reasonable care in an effort to comply with the statute.  *Moe*, 668 F. Supp. 2d at 506.

[21]    As noted previously, Plaintiff did not request summary judgment on the element
of proximate cause, only on the elements of existence of a duty of care and breach of the
applicable duty of care.  (Dkt. No. 51, Attach. 18, at 5, 24 [Pl.'s Mem. of Law].)

3.      **Whether the Supremacy Clause Bars Application of a State Traffic Law Against the United States**

After carefully considering the matter, the Court answers this question in the negative for the reasons stated in Plaintiff's reply memorandum of law.  (Dkt. No. 69, at 10 [Pl.'s Reply Mem. of Law].)  To those reasons, the Court adds the following analysis.

Defendant argues that, because Mr. Wachtel was an employee of the United States, any attempt to hold the United States liable for a violation of a state traffic statute is barred by the Supremacy Clause.  (Dkt. No. 62, at 11-14 [Def.'s Opp'n Mem. of Law].)

In *N. Dakota v. United States*, 495 U.S. 423 (1990), the Supreme Court noted that "[s]tate law may run afoul of the Supremacy Clause in two distinct ways: [t]he law may regulate the Government directly or discriminate against it, [] or it may conflict with an affirmative command of Congress." *N. Dakota*, 495 U.S. at 434 (citations omitted).  The Supreme Court further noted that "[a] state regulation is invalid only if it regulates the United States directly or discriminates against the Federal Government or those with whom it deals." *N. Dakota*, 495 U.S. at 434 (citations omitted).

Much of the case law barring application of a state law under the auspices of the Supremacy Clause involve (a) state statutes that are preempted by federal statutes, (b) state statutes that would regulate the way the United States could use land it owns or leases or would impose taxes or fees on activities related to using that land, or (c) state statutes that would regulate federal control over federal property, such as money.  Notably, the cases that Defendant cites in support of applying the Supremacy Clause involve these types of situations.  (Dkt. No. 61, at 12-14 [Def.'s Opp'n Mem. of Law].)  However, in this case, the conduct at issue occurred on a public state road, not on property owned or controlled by the United States.  Defendant also

has not asserted that the relevant VTL sections at issue are preempted by any federal law.[22]

Rather, it has been recognized that "states have the power to regulate the use of motor vehicles on their highways." *Weisshaus v. Port Auth. of New York & New Jersey*, 11-CV-6616, 2011 WL 13175959, at *2 (S.D.N.Y. Oct. 24, 2011) (citing *Kane v. New Jersey*, 242 U.S. 160 [1916]); *see also Bradley v. Pub. Utilities Comm'n of Ohio,* 289 U.S. 92, 95 (1933) ("Regulation to ensure safety is an exercise of the police power.  It is primarily a state function, whether the locus be private property or the public highways.").  Consequently, because there is no federal traffic law, the relevant VTL sections do not "conflict with an affirmative command of Congress." *N. Dakota*, 495 U.S. at 434.  Nor does the Court see any way in which Section 1161 discriminates against the United States, since the U-turn prohibition is applicable with the same force to any person, governmental or private, who traverses New York roads.  The question therefore is whether Section 1161 directly regulates the United States.

The Supreme Court has noted that "[n]either the Supremacy Clause nor the Plenary Powers Clause bars all state regulation which may touch the activities of the Federal Government." *Hancock v. Train*, 426 U.S. 167, 179-80 (1976) (citing *Penn Dairies v. Pennsylvania Milk Control Comm'n*, 318 U.S. 261 [1943]; *Alabama v. King & Boozer*, 314 U.S. 1, 9 [1941]).  In *Penn Dairies*, the Supreme Court held that the Supremacy Clause was not

---

[22]    The Court notes that *United States Postal Serv. v. Town of Greenwich, Conn.*, 901 F. Supp. 500 (D. Conn. 1995), on which Defendant relies to a great extent, is distinguishable from this case because 39 U.S.C. § 401 explicitly grants the USPS the power "'to construct, operate, lease, maintain buildings, facilities, equipment, and other improvements on property owned or controlled by it.'" *Town of Greenwich*, 901 F. Supp. at 504 (finding the Supremacy Clause barred enforcement of a state statute related to permit and building code enforcement against the USPS when it built a new postal facility on leased land) (quoting 39 U.S.C. § 401[6]).  Unlike *Town of Greenwich*, Section 401 does not list any power that applies to the conduct regulated by the VTL in this case.

implicated by state regulation on milk prices that prevented the United States from purchasing

milk for a military encampment within the state at a price lower than the state-set minimum.

*Penn Dairies*, 318 U.S. at 267-71.  In reaching this conclusion, the Supreme Court stated the

following:

> the Constitution presupposed the continued existence of the states functioning in
> coordination with the national government, with the authority of the states to lay
> taxes and to regulate their internal affairs and policy, and that state regulation
> like state taxation inevitably imposes some burdens on the national government
> of the same kind as those imposed on citizens of the United States within the
> state's borders. [] And we have held that those burdens, save as Congress may
> act to remove them, are to be regarded as the normal incidents of the operation
> within the same territory of a dual system of government, and that no immunity
> of the national government from such burdens is to be implied from the
> Constitution which established the system.

*Id.* at 270-71 (citations omitted).

The Supreme Court ultimately determined that, because the state's regulation did not

conflict with Congressional legislation or with any discernable Congressional policy, the

Government was not immune from the regulation simply because the regulation required the

Government to pay more for milk than if the regulation did not exist.  *Id.* at 621-24.

The Court finds that the rationale in *Penn Dairies* applies to the situation in this case.  As

already noted, regulation of state traffic and road usage is a power traditionally held by the

states, and the federal government has not enacted any law or explicit policy that would conflict

with Section 1161.  Defendant argues that, because the USPS is an agency of the executive

branch and its general duties as stated by Congress include the need to maintain an efficient

system of collection, sorting, and delivery of mail accounting for the needs of customers in

different types of areas, the Supremacy Clause would bar application of any state law against it

that would impede their ability to maintain such efficiency.  (Dkt. No. 61, at 11-12 [Def.'s Opp'n

Mem. of Law].)  More specifically, Defendant points to a Declaration from Rural Delivery Specialist Gail Sattler in which Ms. Sattler states that, "[i]n order to accomplish the Postal Service's duties and directives, Rural Letter Carriers do not and cannot operate their vehicles like ordinary motorists," noting examples of typical driving deviations such as frequent stops, driving on the road shoulder, driving at slow speeds, and performing U-turns.  (*Id.* at 14; Dkt. No. 61, Attach. 4, at 3 [Sattler Decl.].)  However, the mere fact that Congress has specified that the USPS must maintain an efficient mail system does not suggest that Congress intended to categorically exempt USPS drivers from state traffic laws.  *See Penn Dairies*, 318 U.S. at 621 (noting that "[e]ven in the case of agencies created or appointed to do the government's work we have been slow to infer an immunity which Congress has not granted and which Congressional policy does not require") (citations omitted).  The Supreme Court specifically rejected a similar argument in *Penn Dairies*, noting that the Court would not infer an expressed purpose of Congress to set aside a state statute regulating internal affairs where the legislative command was ambiguous as to whether it was intended to do so.  *See Penn Dairies*, 318 U.S. at 623-24 (noting that "[c]ourts should guard against resolving [] competing considerations of policy by imputing to Congress a decision which quite clearly it has not undertaken to make").

Defendant has not cited any portion of the legislation related to the USPS or any statements of Congress' intent when enacting that legislation which would suggest that Congress intended to make USPS mail carriers exempt from state traffic laws, particularly with regard to performing U-turns as described in Section 1161.  The statements from Ms. Sattler that rural letter carriers often engage in conduct that might violate state traffic laws do not establish an "expressed purpose of Congress" to categorically exempt rural letter carriers from the applicable

traffic law.  Therefore, the Court finds that the lack of a discernable Congressional law or policy that conflicts with Section 1161 means that the Supremacy Clause does not bar enforcement of Section 1161 against the United States.

Additionally, as Plaintiff notes, 29 U.S.C. § 401 gives the USPS the authority to "adopt, amend, and repeal such rules and regulations, not inconsistent with this title, as may be necessary in the execution of its functions."  (Dkt. No. 69, at 12 [Pl.'s Reply Mem. of Law].)  Plaintiff cites portions of the USPS' handbook related to Fleet Management and a Postal Operations Manual, which both state that (a) employees driving postal vehicles must comply with state and local traffic laws and (b) postal vehicle drivers have no special right-of-way over private vehicles. (Dkt. No. 69, Attach. 2, at 4 [Fleet Mgmt. Handbook]; Dkt. No. 69, Attach. 3, at 4 [Postal Operations Manual].)  The prefatory material of the Postal Operations Manual states that the purpose of the Manual is to "set[] forth policies, regulations, and procedures of the Postal Service governing retail, philatelic, collection, mail processing, transportation, delivery, and vehicle operations."  (Dkt. No. 69, Attach 3, at 2 [Postal Operations Manual].)  These handbooks therefore refute Defendant's argument that the USPS' broad duty of service was a Congressional implication that letter carriers are not subject to state traffic laws.  Defendant has not submitted any admissible record evidence that would contradict this evidence regarding official federal policy.  Accordingly, the Court finds that there is no genuine dispute of material fact as to whether USPS policy, enacted under authority from Congress, holds employee drivers responsible for following state traffic laws in the course of their work as a letter carrier.  Based on this evidence and *Penn Dairies*, the Court finds that the Supremacy Clause does not bar the use of Mr. Wachtel's violation of Section 1161 against the United States as evidence of per se negligence.

34

**C.    Whether the Discretionary Function Exception to the FTCA Bars Plaintiff's Second Claim**

After carefully considering the matter, the Court answers this question in the affirmative for the reasons stated in Defendant's memoranda of law.  (Dkt. No. 57, Attach. 3, at 13-18 [Def.'s Mem. of Law]; Dkt. No. 70, at 6-7 [Def.'s Reply Mem. of Law].)  To those reasons, the Court adds the following analysis.

The discretionary function exception suspends the FTCA from applying in two situations: (1) "any claim based upon an act or omission of an employee of the Government, exercising due care, in the execution of a statute or regulation;" and (2) any claim "based upon the exercise or performance, or the failure to exercise or perform, a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused."  *Molchatsky v. United States*, 713 F.3d 159, 162 (2d Cir. 2013) (quoting 28 U.S.C. § 2680[a]).   "'[T]he [discretionary function exception] bars suit only if two conditions are met: (1) the acts alleged to be negligent must be discretionary, in that they involve an element of judgment or choice and are not compelled by statute or regulation; and (2) the judgment or choice in question must be grounded in considerations of public policy or susceptible to policy analysis.'"  *Molchatsky*, 713 F.3d at 162 (quoting *Coulthurst v. United States*, 214 F.3d 106, 109 [2d Cir. 2000]).   "Plaintiff bears the initial burden to state a claim that is not barred by the discretionary function exception."  *Id.* (citing *United States v. Gaubert*, 499 U.S. 315, 324-25 [1991]).

Plaintiff concedes that the second prong of the above test has been met, namely that the judgment related to determining postal routes is grounded in considerations of public policy or susceptible to policy analysis. (Dkt. No. 62, Attach. 4, at 8-9 [Pl.'s Opp'n Mem. of Law].)

However, Plaintiff argues that there is at least an issue of fact as to whether the first prong has been met. The Court therefore need only address the first prong.

A defendant fails to meet the first prong of the test for the discretionary function exception if "a 'federal statute, regulation, or policy specifically prescribes a course of action for an employee to follow,' because 'the employee has no rightful option but to adhere to the directive.'" *Gaubert*, 499 U.S. at 322 (quoting *Berkovitz v. United States*, 486 U.S. 531, 536 [1988]). Plaintiff argues that the USPS did not have the discretion to devise routes that include U-turns which violate Section 1161 because various USPS employee handbooks state that postal drivers must follow the same state and local traffic laws as other motorists. (Dkt. No. 62, Attach. 4, at 10-12 [Pl.'s Opp'n Mem. of Law].) Plaintiff argues that this directive is a federal policy that eliminates the USPS' discretion to devise routes containing violations of the VTL. *Id.*

However, the Court is not persuaded by this argument. The handbook sections that Plaintiff cites expressly limit the discretion of postal drivers. They do not, however, purport to impose any duties on the Postmaster who is devising postal routes. Consequently, even if these sections are deemed federal policies as discussed in *Gaubert*, they do not specifically prescribe a course of action that Postmasters or others must follow when devising postal routes. Plaintiff relies on a case from the Tenth Circuit to argue that the fact that Mr. Wachtel was required to violate Section 1161 when following the line of travel instructions for Rural Route 6 establishes that there was also a violation of federal policy (presumably based on the handbook sections stating that letter carriers must obey state and local traffic laws). (Dkt. No. 62, Attach. 4, at 9-10 [Pl.'s Opp'n Mem. of Law].) However, that case is distinguishable. In *Lopez v. United States*, 376 F.3d 1055 (10th Cir. 2004), the Tenth Circuit found that a requirement in the Postal

36

Operations Manual that mailboxes "must be placed to conform with state laws and highway regulations" was a nondiscretionary mandate. *Lopez*, 376 F.3d at 1058. Although *Lopez* did find that the USPS handbook constituted a sufficient federal policy (as Plaintiff argues), the handbook section at issue in *Lopez* specifically instructed that state laws had to be complied with when designing the placement of mailboxes. However, the handbook sections Plaintiff cites do not state that Postmasters or others devising mail routes must ensure that routes comply with state and local laws; rather, they state only that postal drivers must comply with those laws. (Dkt. No. 62, Attach. 4, at 10-12 [Pl.'s Opp'n Mem. of Law].) Plaintiff has not cited any sections of the USPS handbook that state that postal routes must be designed in accordance with state and local laws. Additionally, a declaration from Rural Delivery Specialist Ms. Sattler, who states that she assists post offices with establishing and changing "line of travel" (i.e., postal routes) for Rural Routes, states that "[t]here is no federal statute, rule, or regulation that dictates how the USPS must design its mail routes," as well as "no federal statute, rule, or regulation that dictates where the USPS must place U-turns on a Rural Route." (Dkt. No. 57, Attach. 23, at 2-3 [Sattler Decl.].) Ms. Sattler also notes that there is "no specific USPS policy directive [in various handbooks] that dictates how a Postmaster must design a mail route, other than a general requirement that they balance efficiency, cost, and safety." (*Id.* at 3.) Based on Ms. Sattler's statements and Plaintiff's failure to provide evidence of any federal law or policy that specifically mandates that the USPS devise mail routes that comply with state traffic laws, the Court finds that Plaintiff has not met his burden to show that his claim is not barred by the discretionary function exception. *Molchatsky*, 713 F.3d at 162.

While it may appear inconsistent to find that the USPS has the discretion to design routes that force postal drivers to violate state law while recognizing that the USPS has enacted policies that require their own postal drivers to obey those same state law, the Second Circuit has recognized that the discretionary function exception "is not about fairness, it is about power." *See Molchatsky*, 713 F.3d at 162 (noting also that "the sovereign 'reserves to itself the right to act without liability for misjudgment and carelessness in the formation of policy'") (citation omitted); *see also Nat'l Union Fire Ins. v. United States*, 115 F.3d 1415, 1422 (2d Cir. 1997) (noting that "[a]pplication of the [discretionary function] exception is often troubling, because it may be a shield for carelessness and poor judgment," but ultimately concluding that it was the United States' right as sovereign to pass a statute that imposed only a discretionary duty on the Government to maintain a breakwater in a safe condition after it was built). The question before the Court is not whether the USPS' policies as a whole make practical sense, but rather whether the USPS was subject to any federal mandate that eliminated its discretion to include maneuvers that violate state traffic law when designing postal routes. There is no such federal law or policy that eliminated the USPS' discretion to design Rural Route 6 as it did. The Court therefore grants Defendant's motion for summary judgment and dismisses Plaintiff's Second Claim based on a finding that the discretionary function exception bars that claim.

### E. Whether Toxicology Evidence Should Be Excluded Under Federal Rule of Evidence 403

After carefully considering the matter, the Court answers this question in the negative for the reasons stated in Defendant's reply memorandum of law. (Dkt. No. 70, at 10-11 [Def.'s Reply Mem. of Law].) To those reasons, the Court adds the following analysis.

The Court agrees with Defendant that Plaintiff's cross-motion is essentially a motion *in limine* seeking to exclude certain evidence that is premature at this stage.  *See Jones v. Harris*, 665 F. Supp. 2d 384, 404 (S.D.N.Y. 2009) (denying motion *in limine* at summary judgment stage without prejudice as premature because "*in limine* motions deal with evidentiary matters and are not to be filed until the eve of the trial").  To the extent that Plaintiff argues that this evidence cannot be considered even on a motion for summary judgment if it is not admissible, Plaintiff fails to show how this evidence is relevant to the issues raised in the present motions.  (Dkt. No. 62, Attach. 4, at 29-30 [Pl.'s Reply Mem. of Law].)  Notably, this evidence has no bearing on any issue before the Court other than proximate cause, and Plaintiff does not seek summary judgment on the element of proximate cause.  (Dkt. No. 51, Attach. 18, at 5, 24 [Pl.'s Mem. of Law].)  Although Defendant does request summary judgment in its favor on Plaintiff's First Claim, there is other evidence that creates a sufficient genuine dispute of material fact (including, but not limited to, the condition of the motorcycle Plaintiff was driving, his actions when breaking and approaching Mr. Wachtel's vehicle, and whether Mr. Wachtel's hazard lights were operational at the time of the accident) such that summary judgment for either party is not appropriate on the element of proximate cause.  Because this evidence is not relevant or necessary for the adjudication of the current summary judgment motions, the Court finds that it would be more prudent to consider such a motion *in limine* before trial should Plaintiff wish to raise it again at that time.

**ACCORDINGLY**, it is

**ORDERED** that Plaintiff's motion for partial summary judgment (Dkt. No. 51) is **<u>GRANTED</u>** as discussed above in this Decision and Order; and it is further

**ORDERED** that the first and second elements of Plaintiff's First Claim (i.e., the elements of duty of care and breach of duty of care of Plaintiff's claim for negligence) shall be treated as established in this case;[23] and it is further

**ORDERED** that Defendant's motion for summary judgment (Dkt. No. 57) is **<u>GRANTED</u> in part** and **<u>DENIED</u> in part** as discussed above in this Decision and Order; and it is further

**ORDERED** that Plaintiff's Second Claim is **<u>DISMISSED</u>**; and it is further

**ORDERED** that Plaintiff's cross-motion to exclude toxicology test results (Dkt. No. 62) is **<u>DENIED</u>** without prejudice; and it is further

**ORDERED** that **SURVIVING** these motions for summary judgment is Plaintiff's First Claim for negligence, specifically, the remaining element of proximate cause.

**ORDERED** that counsel are direct to appear on **<u>January 16, 2018 at 2:00 pm</u>** in Syracuse, NY, in chambers for a pretrial conference, at which time counsel are directed to appear with settlement authority, and in the event that the case does not settle, trial will be scheduled at that time to begin on **March 26, 2018** with pretrial submissions being due on **March 5, 2018.**

---

[23]    While it is somewhat unusual for a plaintiff to seek summary judgment on only some of the elements of his or her claim, it is permissible under the Federal Rules of Civil Procedure.  *See* Fed. R. Civ. P. 56(a) ("A party may move for summary judgment, identifying each claim or defense–or *the part of each claim* or defense–on which summary judgment is sought.") (emphasis added); *see, e.g., In re Monahan Ford Corp. of Flushing*, 390 B.R. 493, 501 (E.D.N.Y. 2008) ("Although ultimate judgment cannot be awarded unless all elements are established, nothing prevents the court, under Rule 56(a), from awarding summary judgment on the first two elements of the claim, where, as here, none of the material facts necessary to establish those elements are in dispute."); *cf*. Fed. R. Civ. P. 56(g) ("If the court does not grant all the relief requested by the motion, it may enter an order stating any material fact–including an item of damages or other relief–that is not genuinely in dispute and treating the fact as established in the case.").

Plaintiff is further directed to forward a written settlement demand to Defendants no later than

**January 2, 2018**, and the parties are directed to engage in meaningful settlement negotiations

before the conference.  In the event that counsel feel settlement is unlikely, counsel may file a

letter request at least one week before the scheduled conference advising that settlement is not

feasible, and the Court will cancel the conference and issue a trial order scheduling trial for

March 26, 2018.

Dated: December 18, 2017
      Syracuse, NY

                                  Hon. Glenn T. Suddaby
                                  Chief U.S. District Judge